**FILED**

DEC 0 4 2007    **NR**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | N **07CR    793** |
| | ) | |
| AMJAD SHEIKH-ALI | ) | Violations: Title 18, United States |
| | ) | Code, Sections 1343 and 2; Title 31, |
| | ) | United States Code, Sections 5313(a) |
| | ) | and 5324(a)(3) |

**COUNT ONE**                    **JUDGE KENNELLY**

The UNITED STATES ATTORNEY charges:            **MAGISTRATE JUDGE NOLAN**

1.    At times relevant to Count One of this Information:

a.    The United States Department of Agriculture ("USDA"), Food and Nutrition

Service ("FNS"), was a federal agency responsible for the administration and implementation

of the Food Stamp Program throughout the United States. The Food Stamp Program ("FSP")

provided assistance to needy individuals in the form of food stamp coupons, and later

through Electronic Benefit Transfers ("EBT"). The FSP participants received an EBT card,

also known as a "Link card," which was used to purchase approved food products at

participating stores.

b.    The Link card system was developed to enable government agencies to deliver

FSP benefits to recipients through the use of electronic transfers, much like debit and credit

cards, to eliminate actual, hard copy food stamp coupons. The redemption aspect of the

Illinois Link card system was operated under contract by Affiliated Computer Services and its affiliates located in Austin, Texas.

    c.      To become eligible to participate in the FSP, candidate store owners in the Chicago area were required to complete, sign, and submit to the Chicago Field Office of the USDA-FNS an FSP Application for Stores, known as form FNS 252. Upon completion of the application process, if the store and its owner(s) qualified, the store was authorized to participate in the program and to redeem food stamp benefits from USDA.

    d.      Authorized store owners were required to report to the USDA changes from the initial application in food sales, inventory, stock, size of the store, change of location, change of name, and change in ownership.

    e.      Authorized stores could lawfully only accept Link card benefits in exchange for eligible food items. Authorized stores were prohibited from accepting Link card benefits in exchange for items such as alcoholic beverages, tobacco, hot foods, ready-to-eat foods, lunch counter items, vitamins, medicines, or pet foods.

    f.      Authorized stores were prohibited from accepting Link card benefits in exchange for cash and were prohibited from accepting Link card benefits presented for redemption at another store.

    g.      Prior to receiving authorization to participate in the FSP, the applicant store owner or his/her representative was required to participate in an interview conducted by the

2

USDA. During the interview, the applicant store owner was informed of the prohibitions against accepting Link card benefits in exchange for cash and ineligible items.

h.    When a store was authorized to participate in the FSP, the applicant was informed that the specially- provided and manufactured point-of-sale devices designed accept Link cards are nontransferrable and can only be used at the authorized store.

I.    Through the Link card system, FSP benefits were automatically credited to the Illinois recipient's Link card each month. In order for recipients to access their electronic benefits to purchase eligible food items, they were required to present their Link card to a retailer authorized by USDA. The Link cards could only be processed by a specially-provided and manufactured point-of-sale terminal designed to accept Link cards (hereinafter the "Link card machine"). After manually entering the information or "swiping" the Link card through the Link card machine, the food stamp recipient entered a personal identification number ("PIN") into the machine's keypad to complete the transaction. The Link card machine recorded the Link card account number, the date and time of the transaction, and the amount debited from the recipient's Link card.

j.    Once the necessary information was received by the Link card machine, it automatically called a 1-800 telephone number, which allowed the Link card machine to dial into Affiliated Computer Services' computer system located in Austin, Texas. Through this contact, the Link card transaction was either approved or rejected, and the result was then communicated to the Link card machine, again via the open phone line. If the Link card

3

transaction was approved, Affiliated Computer Services would transfer or cause to be transferred funds from each redemption into the bank account of the authorized retailer to whom the Link card machine was registered. The transfer of funds into an account identified by the authorized retailer normally took place the next business day following the approved Link card transaction.

      k.     Defendant AMJAD SHEIKH-ALI operated "Family Produce Market," a neighborhood grocery store located at 2882 North Milwaukee Avenue, Chicago, Illinois.

      l.     On or about March 18, 2002, defendant AMJAD SHEIKH-ALI caused to be prepared and submitted to the USDA a Food Stamp Program Application for Stores on behalf of Family Produce Market. On the application, defendant AMJAD SHEIKH-ALI represented and caused to be represented to the USDA, among other things, that: (1) the store was owned by the privately-held corporation, (2) that he was the corporation's president, (2) he was the store's on-site manager; (3) the store's annual food sales were \$180,300; and (4) the store's bank account would be held at Bank One.

      m.    On or about March 19, 2002, defendant AMJAD SHEIKH-ALI signed a Retailer Training Acknowledgment on behalf of Family Produce Market, which stated, in part, that: (1) he had attended retailer orientation held by FNS and that the Food Stamp Program rules and regulations had been thoroughly reviewed; (2) he understood that exchanging cash for food stamp benefits was illegal and could result in permanent disqualification from the Food Stamp Program as well as criminal prosecution; and (3) it was

4

his responsibility to ensure that all full-time and part-time employees were properly instructed regarding the Food Stamp Program regulations.

n.      On or about March 19, 2002, defendant AMJAD SHEIKH-ALI also signed an EBT Retailer Agreement on behalf of Family Produce Market which stated, in part, that he: (1) agreed that only eligible food items would be exchanged for food stamp benefits; (2) accepted responsibility on behalf of the firm to prevent violations of the Food Stamp Program, including but not limited to trading cash for food stamp benefits or accepting benefits from people not authorized to use them; and (3) understood that accepting food stamp benefits in exchange for anything other than eligible food items was a violation of Federal criminal and civil law.

o.      On or about April 15, 2002, Family Produce Market was authorized to accept USDA Electronic Benefit Transfer food stamp benefits (EBT), and designated FNS authorization number 5101581.

p.      A review of FNS food stamp and electronic benefit redemptions for Family Produce Market revealed that the store redeemed approximately $794,416 in USDA electronic food stamp benefits from May 2002 through December 4, 2002, despite the store's reported annual food sales of $180,300.

2.      Beginning no later than May 2002, and continuing until on or about December 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

AMJAD SHEIKH-ALI,

defendant herein, and others known and unknown, knowingly devised, intended to devise and participated in a scheme to defraud and to obtain money and property from the USDA by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.    It was part of the scheme that between May and December 2002, defendant AMJAD SHEIKH-ALI used Family Produce Market's authorized LINK card machine, as well as LINK card machines from other stores, to process fraudulent LINK card transactions in which the defendant and others at his direction exchanged, and caused LINK card benefits to be exchanged for discounted amounts of cash knowing that such exchanges were prohibited under the Food Stamp Program.

4.    It was further part of the scheme that defendant AMJAD SHEIKH-ALI fraudulently caused Transactive Corporation and its affiliates to wire transfer approximately $794,416 to the Family Produce Market account Bank One, as reimbursement for LINK card benefits fraudulently redeemed. As part of the scheme and in order to have the money placed in the Family Produce Market account, the defendant caused wire communications to occur from Austin, Texas to the Family Produce Market bank account in Chicago, Illinois.

5.    It was further part of the scheme that beginning in or about May 2002 and continuing until in or about December 2002, defendant AMJAD SHEIKH-ALI withdrew and caused the withdrawal of substantial sums of money from the accounts at Bank One in the

form of, among other things, cash, checks payable to cash, and checks payable to particular individuals or businesses. Defendant AMJAD SHEIKH-ALI used, and caused to be used, portions of the money withdrawn from Bank One to purchase LINK card benefits at discounted rates.

6.      It was further part of the scheme that defendant AMJAD SHEIKH-ALI accepted telephone calls from individuals at stores that did not have LINK card machines and used, and caused to be used, the Family Produce Market LINK card machine to fraudulently redeem benefits for customers at unauthorized stores in return for the payment of U.S. currency to the card holder.

7.      It was further part of the scheme that the defendant transferred, and caused to be transferred, the Family Produce Market LINK card machine to stores that were not authorized to redeem LINK benefits so that LINK card benefits could be exchanged for cash for individuals who were not present and did not shop at Family Produce Market.

8.      It was further part of the scheme that on or about October 17, 2002, defendant knowingly redeemed, and caused to be redeemed, benefits from two transaction involving an Electronic Benefit Card in the total amount of approximately $264.55 using the Family Produce Market LINK card machine when no customers were present in Family Produce Market.

7

9.      It was further part of the scheme that defendant AMJAD SHEIKH-ALI misrepresented and concealed and caused to be misrepresented and concealed the purposes of, and the acts done in furtherance of, the scheme in order to avoid detection of the scheme.

10.      On or about October 17, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

AMJAD SHEIKH-ALI,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale LINK card request for authorization for card number 6014533017088192906, in the amount of $125.10.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The UNITED STATES ATTORNEY charges:

1.    At all times material to Count Two this information,

(a)    Title 31, United States Code, Section 5313(a) and Title 31, Code of Federal Regulations, Section 103.22 required domestic financial institutions to prepare and file with the Internal Revenue Service a Currency Transaction Report (Form 4789) ("CTR") for any transaction involving currency of more than $10,000.

(b)    Bank One, N.A., was a domestic financial institutions subject to the Currency Transaction Reporting requirements described in the preceding paragraph.

2.    On or about November 27, 2002, in the Northern District of Illinois, Eastern Division,

### AMJAD SHEIKH-ALI,

defendant herein, did knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and regulations prescribed thereunder, structure and assist in structuring a transaction with Bank One, N.A. by causing the withdrawal of United States currency in an amount under $10,000.00.

In violation of Title 31, United States Code, Sections 5313 (a) and 5324(a)(3); and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further charges:

1.     The United States Attorney realleges and incorporates the allegations of Count One of this Information herein for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     As the result of committing the offense alleged in Count One of this Information, that is, wire fraud in violation of Title 18, United States Code, Section 1343, defendant,

### AMJAD SHEIKH-ALI,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to, $794,416.56;

3.     If any of the forfeitable property described above, as a result of any act or omission by the defendant:

> a.     Cannot be located upon the exercise of due diligence;
>
> b.     Has been transferred or sold to, or deposited with, a third person;
>
> c.     Has been placed beyond the jurisdiction of the Court;
>
> d.     Has been substantially diminished in value; or

10

      c.     Has been commingled with other property which cannot
               be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of said defendant up to the value of the above

forfeitable property;

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c).

*Patrick J. Fitzgerald, by DRS*
UNITED STATES ATTORNEY

11