UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) 
) No. 07 CR 793
vs. ) Judge Kennelly
)
AMJAD SHEIKH-ALI )

**FILED**
JAN 2 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant AMJAD SHEIKH-ALI, and his attorney, KENT R. CARLSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The information in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Count 1) and structuring withdrawals to avoid the currency reporting requirement in violation of Title 31, United States Code, Sections 5313(a) and 5324 (Count 2).

3.     Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charges to Which Defendant is Pleading Guilty**

5.       By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Two of the information.  Count One charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.  Count Two charges the defendant with structuring withdrawals of currency from a financial institution to avoid the currency reporting requirements, in violation of Title 31, United States Code, Sections 5313(a) and 5324.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## **Factual Basis**

6.       Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the information.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.       With respect to Count One of the information:

Beginning no later than May 2002 and continuing until on or about December 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant, together with others known and unknown to the Grand Jury, knowingly devised, intended to devise and participated in a scheme to defraud and to obtain money and property from the USDA by means of materially false and fraudulent pretenses, representations, and promises.

2

Specifically, defendant AMJAD SHEIKH-ALI operated "Family Produce Market," a neighborhood grocery store located at 2882 North Milwaukee Avenue, Chicago, Illinois. In March 2002, defendant AMJAD SHEIKH-ALI submitted an application to participate in the food stamp program to USDA.  AMJAD SHEIKH-ALI also signed an EBT Retailer Agreement on behalf of Family Produce Market which provided a statement of his responsibilities under the program which included that accepting food stamp benefits in exchange for anything other than eligible food items was a violation of Federal criminal and civil law.

Defendant AMJAD SHEIKH-ALI redeemed approximately $794,416 in USDA electronic food stamp benefits from May 2002 through December 4, 2002, through the use of Family Produce Market's LINK card machine, despite the store's reported annual food sales of $180,300.  During this time, AMJAD SHEIKH-ALI used Family Produce Market's authorized LINK card machine, to process fraudulent LINK card transactions in which the defendant exchanged, and caused LINK card benefits to be exchanged for discounted amounts of cash.  These transactions were accomplished via wire communications occurring between Texas and Illinois.  Defendant AMJAD SHEIKH-ALI also moved and maintained the Family Produce Market LINK card machine at different locations in different sections of Chicago where he and others could exchange cash for LINK card benefits for individuals who were not present at Family Produce Market.

3

In furtherance of the above-described scheme, on October 17, 2002, defendant AMJAD SHEIKH-ALI, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale LINK card request for authorization for card number xxxxxxxxxxxxxxx2906, in the amount of $125.10, in violation of Title 18, United States Code, Sections 1343 and 2.

        b.      With respect to Count Two of the information:

On or about November 27, 2002, defendant AMJAD SHEIKH-ALI knowingly and for the purpose of evading the currency reporting requirements structured and assisted in structuring transactions with Bank One, N.A. by causing the withdrawal of United States currency in an amount under $10,000.00. Between June and November 27, 2002, defendant AMJAD SHEIKH-ALI made an almost daily withdrawal of currency just under $10,000. On November 27, 2007, he withdrew $9,950 in United States currency to avoid the currency reporting requirement in violation of 31 U.S.C. §§ 5313(a) and 5324.

        7.      Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

From September 2001 to March 2002, defendant AMJAD SHEIKH-ALI owned and operated 9 Brothers Grocery located at 3101 West Irving Park Road, Chicago, Illinois. During this time, he also participated with this store in the food stamp program using the

store and the LINK card machine to fraudulently redeem an additional $311,285.09 in LINK benefits for discounted amounts of cash.

From May 2003 to February 2004, defendant AMJAD SHEIKH-ALI owned and operated Charlie Produce Market, a neighborhood grocery store located at 3056 West Diversey Avenue, Chicago, Illinois. Because he was disqualified from the food stamp program, defendant AMJAD SHEIKH-ALI listed his wife as the store's owner and operator. During this time, he continued to participate with this store in the food stamp program under his wife's name, using that store and the LINK card machine to fraudulently redeem an additional $177,638.21 in LINK benefits for discounted amounts of cash.

In addition, from June 28, 2002 to November 27, 2002, defendant AMJAD SHEIKH-ALI structured cash withdrawals from his account at Bank One, N.A. such that he made 23 withdrawals of United States currency totaling $313,900, each withdrawal being in an amount between $9,000 and $9950 and representing the amount received for recent LINK redemptions, to avoid the currency reporting requirement on 31 U.S.C. § 5313.

8.    The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

9.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.      Count Two carries a maximum sentence of 5 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

c.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 10 years' imprisonment.  In addition, defendant is subject to a

total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

<u>**Sentencing Guidelines Calculations**</u>

10.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.    Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The two offenses to which the defendant is pleading guilty shall be grouped together into a single group for purposes of applying Guideline Section 3D1.2. The wire fraud guideline, Section 2B1.1 supplies the highest offense level for the group.

ii.    The base offense level for the charge in count one of the information is 7, pursuant to Guideline Section 2B1.1;

    iii. Pursuant to Guideline Section 2B1.1(b)(1)(I), the offense level should be increased 16 levels to a level 23 because the loss foreseeable to this defendant exceeded $1,000,000 but was less than $2,500,000.

    iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    v. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equal zero and defendant's criminal history category is I.

       d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 20, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 33 to 41 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

       e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

       f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the

Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

12.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

13.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the applicable guidelines range, and the government shall recommend a sentence of 33

10

percent off the low end of the applicable guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

14.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

15.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16.     Regarding restitution, the parties acknowledge that the total amount of restitution owed to the victim is $1,082,986.60, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

11

17.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Forfeiture

18.    The information charges that defendant is liable to the United States for approximately $794,416, which funds are subject to forfeiture because those funds constitute the proceeds of wire fraud as alleged in the Information.  By entry of a guilty plea to the information, defendant acknowledges that the property identified above is subject to forfeiture.

19.    Defendant agrees to the entry of a forfeiture judgment in the amount of $698,014.22, and against the property identified above, in that this property is subject to forfeiture.  Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law.  Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture.  Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

**Presentence Investigation Report/Post-Sentence Supervision**

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns

13

(together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

23.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 793.

24.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

25.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

I.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

15

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Waiver of appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.

d. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charges in the information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives

17

any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the information were brought.

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

### Conclusion

28.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

29.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant

breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

31.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ____1/24/08____

PATRICK J. FITZGERALD
United States Attorney

AMJAD SHEIKH-ALI
Defendant

JAMES M. KUHN, SR.
Assistant U.S. Attorney

KENT R. CARLSON
Attorney for Defendant

19