IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 07 CR 793 |
| | ) | |
| AMJAD SHEIKH-ALI | ) | Judge Kennelly |
| | ) | |

## UNITED STATES' POSITION PAPER AS TO SENTENCING FACTORS

The United States of America, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, pursuant to Local Criminal Rule 32.1(g), files its memorandum on sentencing, recommending a sentence at 1/3 off of the low end of the presumptive guideline range, 22 months' imprisonment.

### Background

On January 24, 2008, defendant Amjad Sheikh-Ali pleaded guilty to a two-count information charging him with wire fraud and structuring cash withdrawals from a financial institution. The information also contained forfeiture allegations. The written plea agreement provides that the government will move pursuant to Guideline § 5K1.1 for a reduction of 1/3 off the low-end of the presumptive guidelines range, recommending sentence of 22 months' imprisonment.

### Argument

Title 18, United States Code, Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of

sentencing.[1]  In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in § 3553(a)(1)-(7).  One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.  § 3553(a)(4), (a)(5).  Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  For two reasons, this court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6).  *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were

---

[1] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  § 3553(a)(2)(A)-(D).

inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007),[2] and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice

---

[2] Although the Seventh Circuit has held that Guidelines 'departures' are no longer relevant after *Booker*, it is true that the Supreme Court referred multiple times to 'departures' from the Guidelines, as a category distinct from § 3553(a) variances, in *Rita*, 127 S. Ct. at 2461, 2465, 2468 (2007). However, even after *Rita*, the Seventh Circuit has continued to express the view that departures are obsolete. *United States v. Dale*, 498 F.3d 604, 611 n.6 (7th Cir. 2007).

system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court and Seventh Circuit cases.

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S. Ct. at 594. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Id.* at 597; *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008). In *Gall*, the Supreme Court affirmed a sentence of probation in an Ecstasy conspiracy case where the low-end of the range was 30 months of imprisonment. Although the Court acknowledged the qualitative difference between probation and a sentence of imprisonment, the defendant presented extensive mitigating facts: his only role in the crime was to deliver drugs to other co-conspirators; he had voluntarily stopped distributing drugs "after deciding, on his own initiative, to change his life," which distinguished him from the "vast majority of defendants

4

convicted of conspiracy"; after withdrawing from the drug conspiracy, he graduated from college and obtained steady employment; when confronted by law enforcement agents, he fully confessed to the crime; when indicted, he moved back to the district in which he was charged and started his own successful business; and he proffered a "small flood" of letters praising his character and work ethic. *Id.* at 591-93, 599-600.

In contrast to the significant and uniquely-personal mitigating facts in *Gall*, the Seventh Circuit warns that major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *Wachowiak*, 496 F.3d at 754. Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.* at 750. To be sure, these are only guides and not bright-line rules for assessing reasonableness, but they are helpful in preventing excessive sentencing disparities.

A sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence. Defendant Sheikh-Ali defrauded the United States Department of Agriculture of a more than one million dollars in food stamp funds. Those funds were intended to alleviate hunger and malnutrition by permitting low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation. Sheikh-Ali's conduct victimized literally all the taxpayers as well as all food stamp recipients in the nation. His fraudulent scheme bilked $1,082,986.80 in federal funds earmarked to feed

needy children. Rather than perform the public service for which it was intended, this money ended up lining the pockets of Sheikh-Ali and his associates as they profited from converting the food stamp benefits, intended as assistance to the needy, into an illicit form of currency for those interested in making a quick and fraudulent buck.

## Conclusion

Based on the foregoing, defendant Sheikh-Ali should be sentenced to 22 months imprisonment.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:  s/ James M. Kuhn, Sr.
   JAMES M. KUHN, SR.
   Assistant United States Attorney
   219 South Dearborn, Room 500
   Chicago, Illinois 60604
   (312) 353-1877
   james.kuhn @ usdoj.gov